IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DEANGELO SANDERS,                    )
                                     )
                   Petitioner,       )
                                     )
vs.                                  )          Case No. 09-cv-0182-MJR
                                     )
UNITED STATES OF AMERICA,            )
                                     )
                   Respondent.       )

<u>MEMORANDUM AND ORDER</u>

REAGAN, District Judge:

      A.    <u>Introduction and Background</u>

Before this Court is DeAngelo Sanders' March 2009 petition to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Analysis of the petition begins with an overview of the procedural history of the underlying criminal case, *United States v. Sanders* (Case No. 05-cr-30200-MJR), which arose from a December 2005 incident.

At 4:30 pm on December 6th, Alton Police stopped a car being driven by Amid Kennedy. DeAngelo Sanders sat in the front passenger seat, and a juvenile rode in the back seat. Police surrounded the vehicle. Cursory visual inspection of the car revealed a sawed-off .410-caliber shotgun lying on the floorboard directly in front of where Sanders was sitting.

According to evidence introduced at a pretrial hearing, Sanders had removed the weapon from his pants and placed it on the floor beneath him.

Alton Police Captain Scott Waldrup recovered the weapon, which was loaded (with one live round chambered), had a barrel measuring 11 and 7/6 inches in length, and had an overall length of 24 inches. The gun was not registered as required by 26 U.S.C. §§ 5845, 5861, and 5871.

Sanders (who had prior convictions, including an Illinois conviction for aggravated battery with great bodily harm) and Kennedy were arrested and taken to Alton Police Department at 4:48 pm. Sanders was advised of his Miranda rights (both orally and in writing). At  4:55 pm, Sanders signed a written Miranda waiver. Interrogation began.

Roughly one hour into interrogation, Sanders was again admonished of his Miranda rights. His statement was videotaped and audio-recorded. Sanders stated that he provided "protection" for Kennedy (served as Kennedy's bodyguard) and that he had handled the shotgun multiple times, including at some point on December 6th, prior to his arrest. At one point Sanders indicated that the shotgun was his, but later he said it was Kennedy's.

On December 8, 2005, Sanders was driven to the Benton, Illinois federal courthouse for an initial appearance. Before departing for Benton, Agent Joshua Knapp of the Bureau of Alcohol, Tobacco and Firearms again read Sanders his Miranda warnings. Sanders indicated that he understood his rights. During the trip to Benton, Sanders told the transport officers that he got the shotgun from his cousin and that he and his cousin sawed off the gun barrel

and stock.  Sanders said he put the tape over the sawed-off stock of the gun. He said he got the gun to protect Kennedy.  Sanders never contradicted his admission that he had handled the gun.

Via two-count indictment issued December 16, 2005, Sanders was charged with possessing a Remington Arms 410-gauge shotgun with a barrel length of 11¼ inches and an overall length of 24½ inches (Count 1) and being a felon in possession of a firearm (Count 2).

Defense counsel (Daniel G. Cronin of the Federal Public Defender's Office) moved for a psychiatric and psychological examination of Defendant Sanders.  The Court granted that motion as well as subsequent defense motions for an independent psychological examination by Dr. Daniel Cuneo, for the production of medical records pertaining to Defendant Sanders, for a contact visit while undergoing his competency evaluation, and to continue trial.

Following a June 2006 hearing, the undersigned Judge declared Sanders competent and reset trial for July 2006.  Sanders then filed a series of motions to exclude certain evidence, allow the introduction of other evidence, impose discovery sanctions against the Government, and suppress incriminating statements made to BATF Agents Joshua Knapp and Jeffrey Matthews.  In August 2006, having continued the trial, set a briefing schedule, and held a hearing, the Court ruled on the motions, denying Sanders' request to suppress the incriminating statements he made to the agents.

Both parties filed additional motions, which the Court resolved on October 10, 2006.  Trial commenced October 16, 2009, lasted four days, and culminated in jury verdicts of guilty on both counts.  Sanders moved for a new trial.  The Court denied that motion in January 2007.

The undersigned Judge sentenced Sanders to 120 months in prison on Count 1 and 295 months in prison on Count 2 (the terms to be served concurrently), plus 5 years of supervised release, an $800 fine and a $200 special assessment.  Judgment was entered accordingly on January 19, 2007.

Sanders appealed.  In April 2008, the United States Court of Appeals for the Seventh Circuit affirmed Sanders' conviction and sentence.

In March 2009, Sanders moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The motion survived threshold review in November 2009.  The Court set (and several times extended) a briefing schedule.  The motion became ripe with the filing of Sanders' reply brief on March 4, 2010.  For the reasons stated below, the Court denies Sanders' request for relief and dismisses his § 2255 petition.

An evidentiary hearing is not warranted.   Sanders asserts an ineffective assistance claim.  Such claims often require an evidentiary hearing, "because they frequently allege facts that the record does not fully disclose." ***Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008).**  But the issues raised here can be resolved on the existing record, which conclusively

demonstrates that Sanders is entitled to no relief.  ***See* Rule 8(a) of RULES GOVERNING SECTION 2255 PROCEEDINGS; *Almonacid v. U.S.,* 476 F.3d 518, 521 (7th Cir.), *cert. denied,* 551 U.S. 1132 (2007); *Gallo-Vasquez v. U.S.*, 402 F.3d 793, 797 (7th Cir. 2005); *Galbraith v. U.S.*, 313 F.3d 1001, 1010 (7th Cir. 2002).**  Stated another way, Sanders has not alleged facts that, if proven, would entitle him to relief.  ***See Sandoval v. U.S.*, 574 F.3d 847, 850 (7th Cir. 2009).**

B.    Analysis of § 2255 Petition

■■    APPLICABLE LEGAL STANDARDS

28 U.S.C. § 2255 authorizes a federal prisoner to ask the court which sentenced him to vacate, set aside, or correct his sentence, if "the sentence was imposed in violation of the Constitution or laws of the United States, ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law."

Relief under § 2255 is limited.  Unlike a direct appeal, in which a defendant may complain of nearly any error, § 2255 proceedings may be used only to correct errors that vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude.  ***See, e.g., Corcoran v. Sullivan*, 112 F.3d 836, 837 (7th Cir. 1997)(§ 2255 relief is available only to correct "fundamental errors in the criminal process").**  Section 2255 has been described as "the federal-prisoner substitute for habeas corpus." ***U.S. v. Boyd,***

**591 F.3d 953, 955 (7ᵗʰ Cir. 2010).  *Accord Washington v. Smith*, 564 F.3d 1350, 1351 (7ᵗʰ Cir. 2009)(referring to a § 2255 petition as "the federal prisoner's equivalent to a § 2254 petition attacking a criminal judgment entered by a state court").**

As the Seventh Circuit has declared, § 2255 relief "is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." ***Harris v. United States*, 366 F.3d 593, 594 (7ᵗʰ Cir. 2004). *Accord Prewitt v. United States*, 83 F.3d 812, 816 (7ᵗʰ Cir. 1996)("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations").**  And § 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues already raised on direct appeal. ***Coleman v. United States*, 318 F.3d 754, 760 (7ᵗʰ Cir.), *cert. denied*, 540 U.S. 926 (2003). *Accord Sandoval,* 574 F.3d at 850 ("claims cannot be raised for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal").**

In the case at bar, Sanders tenders three grounds for § 2255 relief, all three premised on ineffective assistance of counsel (Doc. 1, p. 4):

> (1)  his lawyer failed to object to inconsistent testimony and hearsay testimony during trial;
>
> (2)  his lawyer failed to move or properly argue for a downward departure at sentencing; and
>
> (3)  his lawyer failed to argue that Sanders' "sentence could not be enhanced under

924(c)(2)(B)(I) or (ii) based on convictions not alleged
in [the] indictment."

The Sixth Amendment to the United States Constitution accords criminal defendants the right to effective assistance of counsel. **Wyatt v. U.S., 574 F.3d 455, 457 (7th Cir. 2009),** *cert. denied*, – S. Ct. –, **2010 WL 1006121 (March 22, 2010),** *citing Watson v. Anglin*, **560 F.3d 687, 690 (7th Cir. 2009).** To prevail on a claim of ineffective assistance, a defendant must prove two things (a) that his attorney's performance was objectively unreasonable *and* (b) that he (the defendant/petitioner) suffered prejudiced as a result of this constitutionally deficient performance. **Wyatt, 574 F.3d at 457-58;** *U.S. v. Peleti,* **576 F.3d 377, 383 (7th Cir. 2009);** *Strickland v. Washington*, **466 U.S. 668, 687 (1984).**

This first requirement of this dual test is referred to as "the performance prong" and the second as the "prejudice prong." <u>As to the performance prong</u>, a § 2255 petitioner must overcome a "strong presumption that [his] counsel's conduct falls within the wide range of reasonable professional assistance." **Wyatt, 574 F.3d at 458,** *quoting Strickland*, **466 U.S. at 687-88.** He must establish the specific acts or omissions he claims constitute ineffective assistance, and the Court then assesses whether those acts/omissions are outside the scope of reasonable legal assistance. **Id. See also U.S. v. Acox**, **595 F.3d 729, 734 (7th Cir. 2010),** *citing Williams v. Lemmon*, **557 F.3d 534 (7th Cir. 2009)(Deciding "whether counsel's**

**services were beneath the constitutional floor requires consideration of what counsel did, as well as what he omitted.").**

Evaluation of counsel's performance is highly deferential.  The reviewing court presumes reasonable judgment by counsel and must not second-guess counsel's strategic choices or "tactical decisions." ***Valenzuela v. U.S.*, 261 F.3d 694, 699 (7th Cir. 2003).**  Moreover, the court must "consider the reasonableness of counsel's conduct in the context of the case as a whole, viewed at the time of the conduct, … [applying] a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." ***Id.***

As to the prejudice prong, the defendant/petitioner must demonstrate a reasonable probability that, *but for counsel's errors,* the result of the proceeding would have been different. ***U.S. v. McKee*, – F.3d –, 2010 WL 909069, \*8 (7th Cir. March 16, 2010).**  The inquiry focuses on whether the counsel's errors rendered the proceedings "fundamentally unfair or unreliable." ***Valenzuela*, 261 F.3d at 699.**   As explained below, all three of Sanders' claims fail the *Strickland* test.

■■   **INEFFECTIVE ASSISTANCE AT TRIAL**

As to the first claim, that attorney Cronin was ineffective in failing to object to inconsistent and hearsay testimony at trial, Sanders' reply brief clarifies that this refers to testimony of key prosecution witness Amid Kennedy

and a confidential informant ("CI").  But Sanders has not demonstrated and cannot demonstrate that Cronin's handling of this testimony was objectively unreasonable.

A detailed affidavit furnished by Cronin and submitted with the Government's brief (Doc. 7-1) establishes the following.  As to the <u>hearsay testimony</u> to which Cronin lodged no objection (the CI's testimony about Amid Kennedy), Cronin had a sound reason for refraining from doing so.  The CI testified that he and Kennedy had agreed to "trade" firearms.  The introduction of this testimony permitted defense counsel (in cross-examination of Agent Matthews and in later argument) to (a) emphasize *Kennedy's* connection to the shotgun that Sanders was charged with possessing and (b) highlight the fact that no tips had been given about *Sanders*' involvement with that gun.

As to each piece of <u>inconsistent testimony</u> which Cronin failed to challenge (*see* Doc. 1, pp. 7-10), that decision fell well within the range of reasonable trial tactics.  For example, Agent Matthews testified that Sanders admitted to carrying the shotgun to the car on the day he was arrested (December 6th).  This was *arguably* inconsistent with a portion of Sanders' recorded interview, in which Sanders only admitted to carrying the shotgun to the car at some point that day (i.e., not necessarily that he was the *last* person to carry the gun out and place it in the car prior to the traffic stop).

The interview included this exchange between Agent Matthews and

Defendant Sanders (Government Exh. 6, Statement Transcript, pp. 13-14):

> S/A Matthews:  Okay, now, when you guys left that time, did you take the gun with you, the shotgun with you?
>
> DeAngelo Sanders:  The gun was in the car every time we left the house.
>
> S/A Matthews:  Who carried the gun out?
>
> DeAngelo Sanders: Hm, I mean, man, depending on which time you talk about, I mean, it's numerous people that he had take that out....
>
> S/A Matthews: Well, I'm just talking ... about today. Today is the only day I'm worried about.
>
> DeAngelo Sanders: Today, he took it out like twice and I took it out once....
>
> S/A Matthews: Okay.
>
> DeAngelo Sanders: ....  On the day, ... on the time when you guys pulled us over, I can't say which one of us put it in there....

Sanders faults Cronin for not stressing at trial that Sanders did not admit to carrying the gun out of the house and placing it in the car just prior to the December 6th arrest.  But Cronin's trial strategy rested on arguing that the recorded statement was a false confession entirely.

Additionally, Cronin did not believe it fruitful to cross-examine Agent Matthews about the ambiguity in the statement as to whether Sanders was the last person to carry the gun to the car before the traffic stop.  Sanders admitted to carrying the shotgun to the car at *some* point in the day, so there was little

to gain by focusing on precisely when that point was.  Such focus undoubtedly would have drawn the jurors' attention to what the Government portrayed as Sanders' *admission* of possessing the shotgun.

This decision by Cronin falls squarely within the scope of reasonable trial strategy.  So does each of the other instances of failure to object to inconsistent testimony.

Sanders criticizes Cronin for not exposing an inconsistency in Agent Matthews' testimony about whether the arrangement between Kennedy and the CI regarding the gun was a *sale* (as Matthews testified at one point) or a *trade* (as Alton Police Detective Rory Rathgeb indicated).

In his affidavit, Cronin attests that he did not believe this potential inconsistency was significant, especially because Matthews later testified that during the course of negotiations between Kennedy and the CI, the deal *changed from a purchase to a trade*.  Furthermore, the testimony of both Matthews and Rathgeb "dovetailed into the defense strategy" of arguing that the trade demonstrated *Kennedy*'s ownership and sole possession of the shotgun.  Given this trial strategy (itself a sensible tactic), cross-examination or argument that the deal initially was to be a sale would have detracted from the more important facts defense counsel was stressing – i.e., that Kennedy owned the gun and that the CI never mentioned Sanders by name.

Sanders correctly maintains that some of Kennedy's testimony at

trial was inconsistent with Kennedy's prior statement to Detective Rathgeb. Sanders argues that Cronin should have moved to strike Kennedy's testimony from the record in its entirety, "so the jury could not consider his testimony during deliberation" (Reply brief, Doc. 9, pp. 1-2). But Cronin had a valid reason for not taking that step.

He was able to pointedly challenge the veracity of the Government's star witness by vigorously cross-examining Kennedy on the variance between his trial testimony and his earlier statement, ultimately eliciting a flat-out concession from Kennedy that he had changed his story (Trial Transcript, Volume 2, p. 94; Questions by attorney Cronin and Answers by Amid Kennedy):

> Q.   Did you tell the agents that you would tell them the truth?
>
> A.   Yes, sir.
>
> Q.   You told them earlier that you had the shotgun in your freezer?
>
> A.   I didn't tell them that.
>
> Q.   You have never told law enforcement that you stored the shotgun?
>
> A.   They said that's what somebody told them....
>
> Q.   You never told them that?
>
> A.   I don't remember that.
>
> Q.   You never told them that the first time you saw the shotgun was in your home?

A.   I remember telling them that.

Q.   You *do* remember that?

A.   I remember telling them that.

Q.   Your testimony today is different?

A.   Yes, sir.

There simply is no merit in Sanders' contention that Cronin failed to cross-examine or otherwise challenge the inconsistencies in Kennedy's testimony.  Nor is there any merit in Sanders' assertions as to Cronin's handling of other bits of hearsay or inconsistent testimony.  Cronin's decisions at trial all fall squarely within the range of reasonable judgment, and his trial representation was effective.  Which leaves Sanders' claims as to Cronin's representation at sentencing.

■■   **INEFFECTIVE ASSISTANCE AT SENTENCING**

The Court rejects the argument that Cronin was ineffective in failing to request a downward departure based on Sanders' diminished capacity (described in his reply brief as "mental and emotional conditions," Doc. 9, p. 2). Sanders argues that he had a medical emergency (a "seizure in federal court house prior to detention"), that he had "been taking medications" for years, and that defense counsel should have presented medical history and expert testimony to prove Sanders' entitlement to a downward departure under §5K2.13 of the U.S. Sentencing Guidelines (Doc. 9, p. 2).

This claim is a nonstarter.   Two experts examined Defendant Sanders thoroughly.   Neither of their reports buttresses Sanders' claim. Indeed, the forensic evaluation on which Sanders relies (from Daniel J. Cuneo, Ph.D.) contained damaging information which Cronin had good reason to *not* bring up at sentencing, including the opinion that Sanders was malingering and that he was endeavoring to suppress his true cognitive capacity during the evaluation, "due to his perception that he might avoid, or receive diminished repercussions for, his alleged criminal behavior" (Doc. 1-3, p. 9).   Cronin more than satisfied his duty to effectively represent Sanders at sentencing, and his decision to not argue diminished capacity falls well within the reasonable range of professional conduct.

Moreover, assuming arguendo that Sanders had met the performance prong as to this claim, he has shown no prejudice resulting from this alleged deficiency by counsel.   He has not demonstrated that *but for* Cronin's decision to not argue diminished capacity at sentencing, the result of the proceeding would have been different.   ***See Berkey v. U.S.*, 318 F.3d 768, 772 (7th Cir. 2003), *cert. denied,* 541 U.S. 1055 (2004), *citing Fountain v. U.S.,* 211 F.3d 429, 434 (7th Cir. 2000).**

Sanders' final ground is wholly devoid of merit.   He brands Cronin ineffective for failing to argue that the Court  improperly enhanced the sentence based on prior convictions not included in the indictment (Doc. 1-2, pp. 14-18).

Sanders acknowledges that ***Almendarez-Torres v. U.S.*, 523 U.S. 224 (1998),** controls this claim. ***Almendarez*** holds that a defendant's recidivism may be treated as a sentencing factor by the judge, rather than as a substantive element of the offense which must be determined by the jury. But Sanders contends, based on Justice Thomas' concurring opinion in ***Apprendi v. New Jersey*, 530 U.S. 466 (2000)(advocating that *Almendarez* be overruled),** that Cronin should have argued that Sanders' sentence could not be enhanced based on any prior conviction not included in the indictment.

Cronin's affidavit reveals that he considered and rejected this line of attack, determining that any such argument would be frivolous (Doc. 7-1, p. 6). It is true that only one of Sanders' prior convictions was listed in his indictment, but Cronin had moved in limine to prevent the introduction of Sanders' criminal record at trial and entered into an *Old Chief* stipulation as to the convictions.[1]

Moreover, ***Almendarez*** remains good law, and Cronin had no duty to present a meritless argument (demanding that the Court *not* follow ***Almendarez***). Seventh Circuit law is clear on this point:

> While the Supreme Court has issued several recent opinions clarifying a defendant's Sixth Amendment right to jury findings that increase a ... sentence

---

[1]       ***Old Chief v. United States*, 519 U.S. 172 (1997).**

beyond the statutory maximum, the *Almendarez-Torres* exception has yet to be overruled....

*Almendarez-Torres* clarified that a trial judge may determine at sentencing whether a prior conviction increases the maximum sentence that may be imposed on a defendant without violating the Sixth Amendment. *Id.* The Supreme Court's recent Sixth Amendment case law has maintained this holding. See United States v. Booker, 543 U.S. 220 ... (2005); Blakely v. Washington, 542 U.S. 296 ... (2004);Ring v. Arizona, 536 U.S. 584 ... 2002); Apprendi v. New Jersey, 530 U.S. 466 ... (2000).

[Defendant] points to *Shepard v. United States* for support that findings regarding prior convictions should be made by the jury, 544 U.S. 13 ... (2005). But [Defendant] concedes that we have already decided that the *Almendarez-Torres* exception for prior convictions still stands after *Shepard.*

**U.S. v. Van Sach,** **458 F.3d 694, 703-04 (7th Cir. 2006).**

C.   <u>Conclusion</u>

Sanders has not overcome the "strong presumption that his attorney performed effectively." **Berkey, 318 F.3d 772.** The acts or omissions Sanders criticizes all fall within the wide range of professionally competent assistance.

And though the Court need not reach the second prong of the *Strickland* inquiry, Sanders clearly has failed to demonstrate a reasonable probability that – but for the claimed unprofessional errors by Cronin – the results of Sanders' trial or sentencing would have changed.

For all these reasons, the Court denies Sanders' request for relief and DISMISSES his § 2255 petition.

IT IS SO ORDERED.

DATED April 12, 2010.

s/ *Michael J. Reagan*
Michael J. Reagan
United States District Judge